[Filed November 17, 1885.]

## CARTER, RICE & CO. *v.* M. KOSHLAND, GARNISHEE.

GARNISHEE — PROCESS — SERVICE — VOLUNTARY APPEARANCE. — In garnishment proceedings the order provided for in sections 150 and 160 of the Code of Civil Procedure is process, and must be served on the garnishee personally.   Service upon his attorney is insufficient.   But when it appears that such garnishee voluntarily appeared in person and by attorney at the hearing upon such order, such appearance is equivalent to personal service.

APPEARANCE — NOTICE OF. — The formal notice of appearance in a judicial proceeding prescribed in section 520 is unnecessary, unless the right of the attorney to appear is challenged by the adverse party.

NUNC PRO TUNC ORDER. — *Semble*, that at any time when the rights of third parties have not intervened, a court may so amend its records as to make them conform to the truth.

GARNISHMENT—NOTICE OF.—The delivery to a garnishee of a copy of the writ of attachment, together with a notice to the effect that the officer thereby "attached all debts, property, money, rights, dues, and credits of every nature in his hands or under his control," is a valid garnishment, and sufficiently specifies the property attached.

ID.—JUDGMENT AGAINST—ORDER OF SALE OF ATTACHED PROPERTY.—The Act of October 25, 1878, authorizing an order of sale of property attached supersedes the previous provisions authorizing the entry of judgment against a garnishee, and is a complete substitute therefor.

MULTNOMAH COUNTY. Koshland, garnishee, appeals. Reversed.

The opinion states the facts.

*Alfred F. Sears, Jr.,* and *Raleigh Stott,* for Appellant.

The question is, whether service of process, to bring a party before the court, is valid, when made upon an attorney. It may be affirmed that the order of a court citing the appearance of the garnishee was the process; and the statue is decisive. (Laws 1876, pp. 9, 38; Code, § 522; *Tebo* v. *Baker,* 77 N. Y. 33; *Loop* v. *Gould,* 17 Hun, 585; *Riddle* v. *Cram,* 3 Abb. N. Cas. 117.) The Circuit Court had no authority to make the *nunc pro tunc* order purporting to show a voluntary appearance of the garnishee. Such an order may be made during the term at which the judgment was rendered, while the facts are fresh in the memory of the judge, but after the term has passed the record cannot be amended, unless there is something in the record to amend by. (*Blackamore's Case,* 8 Coke R. 156; Tidd's Prac. 4th Am. ed. 713.) This rule has been adopted in California. (*Branger* v. *Chevalier,* 9 Cal. 172; *De Castro* v. *Richardson,* 25 Cal. 49; *Hegeler* v. *Henckell,* 27 Cal. 492.)

*M. G. Munley,* and *E. B. Watson,* for Respondents.

It may be that a general retainer, merely, will not empower an attorney to accept service of process. But if especially authorized his acceptance will be valid. And under the circumstances of this case such special authority will be presumed,

on appeal as well as on collateral attack. (Weeks Attys.
§§ 199, 218; *Dobbins* v. *Dupree*, 39 Ga. 394; *Conrey* v. *Bren-
ham*, 1 La An. 397; *Denton* v. *Noyes*, 6 Johns. 295; *Gallard* v.
*Smart*, 6 Cowen, 385; *McCreery* v. *Everding*, 44 Cal. 284;
*Ornn* v. *Nat. Bank*, 16 Kan. 341; *Gilchrist* v. *Cannon*, 1 Cold.
581; *Chester* v. *Walters*, 30 Tex. 53; *Cantuline* v. *State*, 33
Ala. 439; *Stevens* v. *Helm*, 15 Ind. 183; *Muscatine Turn Verein*
v. *Frink*, 18 Iowa, 469; *Finch* v. *Lambert*, 62 Pa. St. 370;
*Galpin* v. *Page*, 18 Wall. 350.) The original judgment entry
recites the presence of the garnishee's attorney. Such a recital
is a sufficient record of the appearance of the garnishee, and is
equivalent to proof of service upon him. (Oreg. Code, § 61;
*Rogue River Mining Co.* v. *Walker*, 1 Oreg. 341; *White* v. *N. W.
Stage Co.* 5 Oreg. 99.) The section construed in this decision
is identical with said section 61 (Stats. 1854, § 36, p. 88,
*Christal* v. *Kelly*, 88 N. Y. 285), and raises a conclusive pre-
sumption on appeal that such appearance was authorized.
(*McCreery* v. *Everding*, 44 Cal. 284.) The Circuit Court had
the power to amend its record after the term, so as to show the
appearance of the garnishee. (Freeman Judgments, §§ 63, 71,
72; *Road Co.* v. *Douglas Co.* 5 Oreg. 406; *Strong* v. *Barnhart*,
6 Oreg. 93; *Harvey's Heirs* v. *Wait*, 10 Oreg. 117; *Durning*
v. *Burkhardt*, 34 Wis. 588; *Balch* v. *Gray*, 7 Cush. 282;
*State* v. *Williams*, 28 La. An. 310; *May* v. *People*, 92 Ill. 343;
*Priest* v. *McMaster*, 52 Mo. 60; *Foster* v. *Woodfin*, 65 N. C. 29;
*Norvell* v. *McHenry*, 1 Mich. 227; *Jones* v. *Lewis*, 8 Ired. 70.)
The fact that the case was then pending in this court on appeal
made no difference. (*Camden* v. *Bloch*, 65 Ala. 236; *Perry* v.
*Adams*, 83 N. C. 266; *Welch* v. *Damon*, 11 Gray, 383; *Sham-
burg* v. *Noble*, 80 Pa. St. 158.)

THAYER, J. — This appeal is from a judgment of the Circuit
Court for the county of Multnomah, rendered in favor of the
respondent against the appellant in certain garnishee proceedings.

It appears from the transcript that on the 13th day of
May, 1885, the respondent, a private corporation, commenced
an action at law against one L. H. Frank, in said court, to recover

a debt of some $378.57, due from the latter to the former, and thereupon sued out a writ of attachment, which was issued on the next day.   The attachment is in the usual form.   The sheriff to whom the writ was delivered certified thereon as follows:—

"I hereby certify that I received the within writ of attachment on the 14th day of May, 1885, and executed the same on the 14th day of May, 1885, at Portland, in the county of Multnomah, in said State, by serving a garnishment upon Koshland Bros., as required by law, garnishing all debts, property, moneys, rights, dues, credits of every nature in their hands or under their control, belonging or owing to the said L. H. Frank, to which the said Koshland Bros. made an answer thereto, said answer being hereto attached and made a part of this return."

The answer referred to is as follows:—

"I hereby return that we have no property in our hands at this time, nor have we any property, debts, money, dues, credits of any kind or nature belonging to L. H. Frank.

[Signed]                                   "KOSHLAND BROS."

There seems to have been a notice signed by the sheriff, directed to said Koshland, to the effect that, by virtue of said writ of attachment, all debts, etc., as mentioned in said return, had been attached and garnished, and that said answer was indorsed thereon.   Said notice bore date the 14th day of May, 1885.   Upon June 1, 1885, the said Circuit Court gave judgment in said action at law in favor of said respondent, and against said Frank, for the amount of said debt, and on the 9th day of June, 1885, on motion of the respondent's attorneys, the judgment was amended by the insertion of a further adjudication, to the effect that the property of said Frank taken under writ of attachment be sold to satisfy said judgment.

Prior to the date of the amendment, on the 6th day of June, 1885, the respondent's attorneys made and filed an affidavit showing that said action at law had been commenced; that the judgment therein had been recovered on said 1st day of June, 1885; that on the 14th day of May, 1885, the said writ of attachment had been issued, and in which it was stated that garnishee process was duly served upon said Koshland Bros.,

and answer was made by them as before mentioned; that said
answer was unsatisfactory to respondent, and that it was of the
opinion and belief that Koshland Bros. had sufficient property
in their possession and under their control belonging to said
Frank to satisfy said judgment, which property was described in
said affidavit, and wherein said attorney asked for an order citing
the garnishee, as he termed him, to appear and be examined
under oath.   The circuit judge, it appears, on the same day,
upon the said affidavit, made the following order:—

"It appearing to my satisfaction, upon the plaintiff's affidavit
herein, that Koshland Bros. have property of the defendant L.
H. Frank, I hereby order that said Koshland Bros. appear
before me at Circuit Court, Department No. 1, on the 13th day
of June, 1885, to answer concerning the same."

The affidavit and order were served upon Alfred F. Sears,
Jr., an attorney of the said court, who admitted service thereof
in writing in the following manner:—

"STATE OF OREGON,       }
COUNTY OF MULTNOMAH. }  ss.

"Due and legal service of the within affidavit, together with
copy of same, served upon me this 6th day of June, 1885, in
this county and State.

"ALFRED F. SEARS, Jr., of garnishee's attorneys."

(Same venue.)   "Due and legal service on me of the within
order, together with copies of the same, this 6th day of June,
1885, within this county and State, is hereby acknowledged.

"ALFRED F. SEARS, Jr., of garnishee's attorneys."

On the 10th day of June, 1885, the said respondent's attor-
neys filed in the office of the clerk of the said Circuit Court,
written allegations in the form of a complaint, in which, among
other things, is alleged the issuance of the said attachment, the
service of a certified copy thereof, together with a notice upon
said Koshland Bros., whereby all debts, etc., as mentioned in
said return, were duly levied upon and garnished to satisfy said
judgment, and the making of the answer thereto of said Kosh-
land Bros., which is hereinbefore set out.   It is further alleged
in said allegations that said Koshland Bros. had property in

their possession belonging to said Frank, and that they were holding the same to hinder and delay, etc., said Frank's creditors. Said attorney also filed a list of interrogatories propounded to said Koshland Bros., regarding said property with said complaint, and upon which complaint and interrogatories was an admission of service by the said Alfred F. Sears, Jr., in the same form as upon said affidavit and order. No answer was filed to said allegations or interrogatories; and afterwards, and on the 29th day of June, 1885, the said Circuit Court gave judgment in favor of the respondent and against M. Koshland, who, I understand, is Koshland Bros., for want of answer, in the sum of $378.57, which is the judgment appealed from.

The appellant's counsel contended, upon the argument, that the said order should have been served upon the garnishee personally, and that no jurisdiction was acquired over the person of the garnishee by the service made upon Mr. Sears. There is no doubt about the correctness of that position; and it was conceded by the respondent's counsel upon the argument. But the latter insisted that said garnishee voluntarily appeared in the proceeding, and thereby gave the said court jurisdiction. That an attorney should attempt to serve original process in any case, except in the manner pointed out by the Civil Code, is very strange, indeed. Koshland was the party required to answer concerning the property, and disobedience to the order would subject him to punishment for contempt. He was the only party to be served, and nothing less than personal service upon him should have been permitted. The first step to be taken in the proceeding was to bring him into court. After the order was allowed, the proceeding had a distinct character, and it was just as important to make personal service of process in such case as in that of the commencement of an action or suit. The service of the summons in the latter proceeding could as well be dispensed with as that of the order in the former. If it did not appear affirmatively that Mr. Sears was, in fact, the garnishee's attorney, that they both were before the court when a motion was made for judgment and the matter was continued, as shown by the *nunc pro tunc* journal entries, for several days, upon Mr.

XII. OREG.—32.

Sears' application, and ample time given the garnishee in which to answer the allegations and interrogatories referred to, I should be in favor of a prompt reversal of the judgment, for a defect of service of the order. But it seems to me that that, under the circumstances of the case, was equivalent to personal service.

The appellant's counsel claim that an appearance in such case can only be made in the mode pointed out in the Code, section 520, and that it requires a formal notice in writing to constitute such appearance. That would doubtless be so if the right of an attorney to be heard in an action, suit, or proceeding were challenged by the opposing party, but where the right is conceded, the attorney has been heard, and the client has had the benefit of the hearing, the latter would not be in a very favorable position to claim that the appearance was unauthorized. The adverse party might have objected to the appearance, or have waived the objection, and if he chose to take the latter course, his opponent ought not to be allowed to complain. It is very seldom that any formal notice of appearance is served upon the opposite party in any case; and when an attorney is authorized to manage a party's legal business, and has done so, and his adversary has made no objection on account of his neglect to give written notice of appearance, the party should certainly not be permitted to take advantage of the informality.

It was urged upon the part of the appellant that the record of the court could not properly be corrected after the adjournment of the term, so as to show that he appeared by attorney at the time before referred to. It is generally agreed that courts have a continuing power over their records not affected by the lapse of time, and the more liberal rule recognizes the right to resort to any satisfactory evidence within their reach in order to ascertain the accuracy of such records. I can discover no good reason why a court cannot at any time, when the rights of third parties are not involved, so amend its records as to make them conform to the truth. There had been a neglect in this matter to record the full proceedings had when the first application was made for judgment herein for want of answer, and the court,

very properly ordered the record amended in that particular. At least I can discover no impropriety in doing it.

The more serious question in the case involves the right of the court to give judgment against the appellant on the garnishee proceedings. I was very strongly impressed in the outset that there had been no legal service of the said attachment. Subdivision 3 of section 147 of the Civil Code, provides how property shall be attached when in the hands of a third person. A certified copy of the writ and a notice *specifying* the property attached must be left with such third person.

I could not understand how such a notice could be given unless the sheriff was able to identify the property, and was loth to believe that a notice to the effect that the sheriff had attached all the debts, property, etc., as mentioned in said notice, delivered to the appellant, would answer the requirements of the statute, when it did not specify the property attached. But I find that the court of appeals of the State of New York, in *O'Brien* v. *Mechanics & Traders F. Ins. Co.* 56 N. Y. 52, has held that such a service under a similar statute is valid. It appears that the question was for a long time a mooted one in that State, but that said decision has fully settled it. I am satisfied that the construction given in *O'Brien* v. *Mechanics & Traders F. Ins. Co.* renders the statute upon the subject more effectual, and I am inclined to follow it, though it has the appearance of judicial legislation.

The proceedings in such a case are specifically pointed out in the Code of 1872, and the respondent appears to have complied with the law as it then stood. It authorized a plaintiff in such a case, when the certificate given by the person alleged to have property of the defendant in his possession was unsatisfactory, to apply for an order requiring such person to appear and be examined on oath concerning the same, and to serve upon him written allegations and interrogatories touching any of the property liable to attachment as the property of the defendant·; and if he failed to answer, the plaintiff, among other things, could at any time after the entry of the judgment against the defendant in the action, have judgment against the garnishee for want

of such answer. (Civ. Code, §§ 162–164.) But the Act of October 25, 1878, providing that if judgment be recovered by the plaintiff, and it appear that property has been attached in the action, the court shall order and adjudge the property to be sold to satisfy the plaintiff's demands, and if execution issue thereon, the sheriff shall apply the property attached by him, affords another remedy.

Under that act the property may be sold upon execution issued on the judgment in the main action, and the respondent availed itself of the benefit of the provision as shown by the amended judgment entry of June 9, 1885, adjudging that the property of the defendant taken under the writ of attachment be sold to satisfy said judgment. By that entry the respondent secured every right in the premises it was entitled to. After obtaining a judgment for the sale of the property to satisfy the debt, it was not entitled to a general judgment against the garnishee for the value of the identical property. That would be repugnant to sense and justice. I think the Act of October 25, 1878, has superseded the provision in the garnishee proceedings authorizing the entry of judgment against the garnishee, and that the latter proceedings are only effectual as a means of discovery. Proceedings of that character being statutory, will not be extended by implication. The remedy given by the latter statute in the particular case referred to is a complete substitution for that given in the prior one, and if the two were allowed to stand would lead to absurdity and injustice, as the proceedings in the case under consideration fully prove. After the respondent obtained a judgment that the property attached be sold to satisfy the debt, the court certainly had no right to render a general judgment against the appellant for the amount of the debt. The two proceedings were for the same purpose, to reach the said property or its value, and apply it to the payment of the debt; and when it had been effectually reached in the action the garnishee proceedings were terminated as completely as they would have been had the defendant Frank come forward on the 9th day of June, 1885, and paid off the judgment against him.

I can see no alternative but that the judgment against the

appellant must be reversed. The respondent will still retain its remedy under the judgment against the said defendant. The system under the two statutes is complete under this construction. The garnishee proceedings can be used in such a case as a means of discovery, and when the property attached is fully identified, a judgment can be taken in the action against the defendant therein for the amount of the debt, and for a sale of the attached property to satisfy it.

The judgment appealed from is reversed, with costs.

LORD, J., concurs.

The chief justice took no part in the decision.